# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| KEELY HUNT,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ACADEMY MORTGAGE CORPORATION,<br><br>　　　　Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 2:17-cv-01028-PMW<br><br><br>Chief Magistrate Judge Paul M. Warner |

　　　　All parties in this case have consented to Chief Magistrate Judge Paul M. Warner conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1] *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Before the court are (1) Defendant Academy Mortgage Corporation's ("Academy") motion to dismiss,[2] (2) Plaintiff Keely Hunt's ("Hunt") motion to substitute party,[3] and (2) Academy's motion for summary judgment.[4] The court has carefully reviewed the written memoranda submitted by the parties on the above-referenced motions. Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral

---

[1] *See* docket no. 15.

[2] *See* docket no. 21.

[3] *See* docket no. 23.

[4] *See* docket no. 19.

argument is not necessary and will decide the motions on the basis of the written memoranda. *See* DUCivR 7-1(f).

## **RELEVANT BACKGROUND**

The following background is taken from Hunt's complaint and from other sources that are properly considered in the context of a motion to dismiss under Rule 12(b)(6).[5]

1. In February 2016, several months after her employment with Academy ended, Hunt filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging claims for disability discrimination and retaliation under the Americans with Disabilities Act ("ADA").[6]

2. On October 4, 2016, while the Charge was still pending, Hunt filed a voluntary Chapter 13 petition for bankruptcy ("Chapter 13 Petition") in the United States Bankruptcy Court for the District of Utah ("Bankruptcy Court").[7]

---

[5] In reviewing a motion to dismiss, courts may rely not only upon the facts as alleged in the complaint, but also upon all documents adopted by reference in the complaint, documents attached to the complaint, or facts that may be judicially noticed. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991). In the context of a motion to dismiss, courts may take judicial notice of court dockets and filings. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[I]t has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

[6] See docket no. 2 at 3; docket no. 21, Exhibit 1.

[7] *See* docket no. 19, Exhibits 5-6. Academy's motion for summary judgment, *see* docket no. 19, and its reply memorandum in support of that motion, *see* docket no. 22, were incorporated by reference into Academy's motion to dismiss. *See* docket no. 21 at 2 n.1. Accordingly, where it is appropriate and proper to do so in reciting the background for Academy's motion to dismiss, the court will reference exhibits to Academy's motion for summary judgment.

3. Along with the Chapter 13 Petition, Hunt filed a Statement of Financial Affairs for Individuals Filing for Bankruptcy, in which she indicated that "[w]ithin 1 year before [she] filed for bankruptcy," she had not been "a party in any lawsuit, court action, or administrative proceeding."[8]

4. Hunt attested that she "read the answers on [her] *Statement of Financial Affairs* and any attachments, and [she] declare[d] under penalty of perjury that the answers are true and correct."[9]

5. Additionally, Hunt filed certain schedules that included affirmative representations to the Bankruptcy Court regarding her assets and liabilities.[10]

6. In Schedule A/B, Hunt was asked whether she had any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment[.] *Examples*: Accidents, employment disputes, insurance claims, or rights to sue," and she responded, "No."[11]

7. Hunt was also asked whether she had any "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to sett off claims," and she responded, "No."[12]

8. Hunt filed a Declaration About an Individual Debtor's Schedules, in which she acknowledged that "[i]f two married people are filing together, both are equally responsible for

---

[8] Docket no. 19, Exhibit 7 at 5.

[9] *Id*. at 12.

[10] *See id*., Exhibit 8 at 8.

[11] *Id*. at 8.

[12] *Id*.

supplying correct information," and declaring "[u]nder penalty of perjury . . . that I have read the summary and schedules filed with the declaration and that they are true and correct."[13]

9. On March 30, 2017, the Bankruptcy Court dismissed the Chapter 13 Petition, "having determined that all requirements for confirmation ha[d] not been met."[14]

10. On April 11, 2017, Hunt and her husband filed a voluntary petition for Chapter 7 bankruptcy ("Chapter 7 Petition").[15]

11. After filing the Chapter 7 Petition, Hunt also filed various schedules summarizing her assets and liabilities.[16]

12. Hunt was asked whether she had any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment[.] *Examples*: Accidents, employment disputes, insurance claims, or rights to sue," and she responded, "No."[17]

13. Hunt was also asked whether she had any "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to sett off claims," and she responded, "No."[18]

---

[13] *Id.*, Exhibit 9 at 1.

[14] *Id.*, Exhibit 11 at 1.

[15] *See id.*, Exhibits 6, 12.

[16] *See id.*, Exhibit 14.

[17] *Id.* at 8.

[18] *Id.*

14. In addition to the schedules, Hunt filed a Statement of Financial Affairs for Individuals Filing Bankruptcy, in which she indicated that "[w]ithin 1 year before [she] filed for bankruptcy," she had not been "a party in any lawsuit, court action, or administrative proceeding."[19]

15. Hunt attested that she "read the answers on [her] *Statement of Financial Affairs* and any attachments, and [she] declare[d] under penalty of perjury that the answers are true and correct."[20]

16. Finally, Hunt filed a Declaration About an Individual Debtor's Schedules, acknowledging that "[i]f two married people are filing together, both are equally responsible for supplying correct information," and declaring "under penalty of perjury . . . that I have read the summary and schedules filed with the declaration and that they are true and correct."[21]

17. On August 17, 2017, the Bankruptcy Court granted Hunt a discharge in bankruptcy.[22]

18. As part of the discharge, the Bankruptcy Court discharged $267,381.00 in debt that Hunt owed to her creditors.[23]

---

[19] *Id.*, Exhibit 15 at 3.

[20] *Id.* at 6.

[21] *Id.*, Exhibit 16 at 1.

[22] *See id.*, Exhibit 17.

[23] *See id.*, Exhibit 13 at 4.

19. The Bankruptcy Court also ordered that the trustee be discharged and the case be closed.[24]

20. In June 2017, during the pendency of her bankruptcy proceedings, Hunt requested a Notice of Right to Sue, so that she could pursue her discrimination and retaliation claims against Academy in this court.[25]

21. The EEOC "terminat[ed] its processing of" the Charge and issued Hunt a Notice of Right to Sue on July 18, 2017.[26]

22. On September 14, 2017, approximately one month after the Bankruptcy Court discharged her debts, Hunt filed the instant action against Academy.[27]

23. In her complaint, Hunt asserts claims against Academy for disability discrimination and failure to accommodate under the ADA, along with a claim for retaliation.[28]

## **ANALYSIS**

As previously noted, the following motions are before the court: (1) Academy's motion to dismiss, (2) Hunt's motion to substitute party, and (3) Academy's motion for summary judgment. The court will address the motions in that order.

---

[24] *See id*. at 2.

[25] *See id*., Exhibit 18.

[26] *Id*. Exhibit 19; *see also* docket no. 2 at 3.

[27] *See* docket no. 2.

[28] *See id*.

**I.       Academy's Motion to Dismiss**

In this motion, Academy argues that this action should be dismissed pursuant to Rule 12(b)(6) because Hunt is not the real party in interest.[29] Based upon the analysis below, the court agrees with that argument and concludes that Academy's motion to dismiss must be granted.

**A.       Hunt Is Not the Real Party in Interest**

At the outset, the court notes that Academy's motion to dismiss is properly "grounded on an objection to a plaintiff's status as a real party in interest. A real party in interest defense can be raised as a Rule 12(b)(6) motion, stating, in effect, that because the plaintiff is not the person who should be bringing the suit, the plaintiff has failed to state a claim upon which relief can be granted." *Classic Commc'ns, Inc. v. Rural Tel. Serv. Co.*, 956 F. Supp. 910, 916 (D. Kan. 1997) (quotations and citations omitted).

Pursuant to Rule 17(a)(1), "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). In this case, when Hunt caused the reopening of her bankruptcy, and the trustee was appointed, "the trustee became the real party in interest, and he was the only one who could prosecute claims belonging to the bankruptcy estate." *Smith v. United Parcel Serv.*, 578 F. App'x 755, 758 (10th Cir. 2014). At the same time, Hunt's "legal rights and interest in any pending litigation were extinguished, and [her] rights transferred to the

---

[29] Academy presents several other arguments in its motion to dismiss. First, Academy contends that the trustee lacks capacity to join this action as the real party in interest under Rule 17. *See* Fed. R. Civ. P. 17. However, Hunt has specifically indicated that she is not seeking joinder of the trustee in this case. *See* docket no. 25 at 2. Accordingly, the court will not address Academy's joinder arguments. Second, Academy argues that the court lacks subject matter jurisdiction over this action. *See* Fed. R. Civ. P. 12(b)(1). Because the court has determined that Academy's argument that Hunt is not the real party in interest is dispositive of this case, the court will not address Academy's arguments concerning subject matter jurisdiction.

trustee." *Id*. Accordingly, all of Hunt's rights to prosecute her claims have been extinguished, and they must be dismissed under Rule 12(b)(6).

**B.      Hunt's Arguments In Opposition to Academy's Motion to Dismiss**

Hunt presents three main arguments in opposition to Academy's argument on this issue, none of which is persuasive to the court. The court will address Hunt's arguments in turn.

**1.      Substitution Under Rule 25(c) Is Not Proper**

First, Hunt argues that dismissal of her claims is not proper because the trustee, whom Hunt concedes is the real party in interest, should be substituted as the real party in interest under Rule 25(c). *See* Fed. R. Civ. P. 25(c). This argument is the basis for Hunt's motion to substitute party, which the court will address in Section II below. For the reasons set forth below in support of denying that motion, which are incorporated here by reference, the court concludes that Hunt's argument regarding Rule 25(c) is without merit.

**2.      Rule 17(a)(3) Is Not Warranted**

Second, Hunt relies upon Rule 17(a)(3) to avoid dismissal of her claims. Rule 17(a)(3) provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). In the Tenth Circuit, a district court's decision to determine whether relief is available under Rule 17 is reviewed for abuse of discretion. *See Scheufler v. Gen. Host Corp.*, 126 F.3d 1261, 1270 (10th Cir. 1997).

In this case, the court concludes that Rule 17(a)(3) relief is not warranted. As noted by Academy, Hunt fails to cite to Tenth Circuit precedent or provide argument concerning Rule

17(a)(3)'s requirements for ratification, joinder, or substitution in the absence of a real party in interest. *See In re Sandia Resorts, Inc.*, No. 11-15-11532 JA, 2016 WL 3150998, at *7 (Bankr. D.N.M. May 26, 2016) ("Tenth Circuit precedent permits the real party in interest to be substituted, ratify, or join under Rule 17(a)(3) only when commencement of the case by the wrong party was the result of an 'honest mistake' and the defendant will not be prejudiced by the joinder.") (rejecting substitution of real party in interest under Rule 17) (citing *Esposito v. United States*, 368 F.3d 1271, 1275 (10th Cir. 2004)). Nevertheless, even if Hunt had cited the relevant precedent, the court concludes that Academy has demonstrated that Rule 17(a)(3) relief is not appropriate here because Hunt cannot satisfy Rule 17(a)(3)'s requirements for ratification, joinder, or substitution.

With respect to the first requirement, the court concludes that Hunt's commencement of this action was not the result of an honest mistake. When considering the first factor, the Tenth Circuit has instructed courts to focus on whether the "plaintiff engaged in deliberate tactical maneuvering (i.e. whether his mistake was 'honest')." *Esposito*, 368 F.3d. at 1276. Additionally, "[w]here a debtor has both knowledge of the claims and a motive to conceal them, courts routinely, albeit at times *sub silentio*, infer deliberate manipulation." *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1157 (10th Cir. 2007). Here, it is undisputed that Hunt had knowledge of her claims. The court is persuaded that Hunt also had a motive to conceal her claims. Indeed, "it was to [Hunt's] benefit to conceal the claim so that [she] could receive a full discharge in bankruptcy before proceeding with the lawsuit, because this would allow [her] to pursue an award for damages without the risk that any of the award would go to [her] creditors." *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1094 (10th Cir. 2013); *see also Love v. Tyson Foods, Inc.*,

9

677 F.3d 258, 262 (5th Cir. 2012) ("[T]he motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure.") (quotations and citation omitted).

As for the second requirement, the court concludes that Academy was prejudiced. Academy was deprived of the opportunity to participate in the administrative process with the actual, real party in interest, the trustee. After Hunt's April 2017 bankruptcy, but before the July 18, 2017 right to sue notice was issued, Academy could have negotiated a resolution of the claims in this case with the trustee and the EEOC. *See, e.g.*, *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 799 (D.C. Cir. 2010) ("Had the trustee known of this lawsuit during the Chapter 7 bankruptcy proceedings, she might have settled the case early or decided not to pursue it, actions that might have benefitted [the defendant]."). Instead, Academy expended time and resources negotiating with Hunt who had no legal right to settle the claims. Furthermore, if Academy had been able to reach a resolution with the trustee during the administrative process, it could have avoided expending substantial resources to litigate this matter, and it could have attempted to resolve this matter in a way that was practical for both Academy and the trustee.

In summary, the court concludes that Hunt's Rule 17(a)(3) argument fails. Notably, Hunt failed to cite to or present argument on Rule 17(a)(3)'s requirements for ratification, joinder, or substitution in the absence of a real party in interest. Furthermore, the court concludes that she cannot satisfy those requirements because her commencement of this action was not an honest mistake and because Academy has been prejudiced.

### 3. The Trustee Does Not Step into Hunt's Shoes in This Case

Third, Hunt argues that the "[t]rustee steps into [Hunt's] shoes" in this case and, consequently, inherited Hunt's interests in this action.[30] Importantly, as noted by Academy, Hunt fails to cite any authority in the Bankruptcy Code to support that argument. Academy, however, has cited to and presented arguments under the Bankruptcy Code and other pertinent authorities, and the court is persuaded by those arguments. For the following reasons, the court concludes that Hunt's argument on this issue fails.

Section 541 of the Bankruptcy Code defines the nature of the property, including a legal claim, that is part of the estate that a trustee controls. *See* 11 U.S.C. § 541(a)(1) (placing "all legal or equitable interests of the debtor in property as of the commencement of the case" into the estate). Although section 541 sweeps into the estate "choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case. . . . The trustee can assert no greater rights than the debtor had *on the date the case was commenced*." 5 Collier on Bankruptcy ¶ 541.03 (16th ed. 2018) (emphasis added). "Even though section 541 provides the framework for determining the scope of the debtor's estate and what property will be included in the estate, it does not provide any rules for determining whether the debtor has an interest in property in the first place." *Id*. Notably, section 541 "speaks as of the commencement of the [bankruptcy] case," and "once the estate is created, no interests in property of the estate remain in the debtor." *Id*.

---

[30] Docket no. 25 at 2.

Based upon those principles, to analyze the nature of Hunt's claim that is property of the estate, the court examines that claim at the time of her April 2017 bankruptcy. At that time, Hunt possessed only a charge of discrimination that she was prosecuting before the EEOC. She had not yet obtained a right to sue notice issued by the EEOC and, consequently, was unable to assert her claim in court. *See Rendon v. Beehive Condos., LLC*, No. 2:14-cv-130-CW, 2014 WL 6977718, at *4 (D. Utah Dec. 9, 2014) ("A plaintiff must also obtain a right to sue notice from the EEOC, and he or she must file Title VII and ADA claims in court no later than ninety days after receiving the notice."). Thus, at the time of the Hunt's bankruptcy filing, the trustee inherited what amounted to an unperfected claim of disability discrimination that could not be lodged in any court.

It is true that the EEOC issued a right to sue notice to Hunt later, on July 18, 2017. However, at that point, Hunt had absolutely "no interests" in the claim. Collier, ¶ 541.03. Therefore, the issuance of the right to sue notice to Hunt had no legal effect; it was a nullity because it was issued to someone who had no substantive right to sue and no interest in the relevant claim. Equally important, a claimant "has ninety days from receipt of the right to sue letter in which to file suit." *E.E.O.C. v. W.H. Braum, Inc.*, 347 F.3d 1192, 1198 (10th Cir. 2003) (discussing administrative requirements for ADA claims). Here, the actual claimant, the trustee, failed to bring suit. Instead, Hunt filed suit. But Hunt had "no interests" in the claim she filed, Collier ¶ 541.03, and no right to sue anyone. Accordingly, Hunt's original lawsuit was also without legal effect and was a nullity.

Furthermore, Hunt's continued prosecution of a claim in which she had no interest was a violation of the automatic stay in place in any bankruptcy. Hunt's April 2017 bankruptcy created

an automatic stay prohibiting "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Actions that violate the automatic stay are "void and of no effect." *In re Kline*, 472 B.R. 98, 103 (B.A.P. 10th Cir. 2012). As such, even Hunt's acquisition of a right to sue notice and her subsequent filing of this action, both of which were clear actions to obtain possession of property that belonged to the estate, were void and of no legal effect. As such, there is simply no lawsuit in which the trustee may be substituted for Hunt.

## II. Hunt's Motion to Substitute Party

In this motion, Hunt argues that the trustee should be substituted as the named plaintiff in this case in place of Hunt pursuant to Rule 25(c). *See* Fed. R. Civ. P. 25(c). Hunt's basic contentions in support of her motion are that her interest in this case was somehow transferred to the trustee and that "the [t]rustee now stands in the position of [Hunt] with respect to interest of this case."[31]

In response, Academy argues that (A) Rule 25(c) is inapplicable here, (B) the plain language of Rule 25(c) supports denial of Hunt's motion, and (C) substitution is improper because Hunt's original complaint was void. The court agrees with Academy's arguments and concludes that Hunt's motion to substitute party must be denied. The court will address Academy's arguments in the order listed above. Before reaching those arguments, the court notes that Rule 25(c) motions are reviewed for abuse of discretion. *See R.J. Enstrom Corp. v. Interceptor Corp.*, 555 F.2d 277, 281 (10th Cir. 1977).

---

[31] Docket no. 23 at 2.

### A. Rule 25(c) Is Inapplicable

Academy argues that Rule 25(c) does not allow the relief Hunt seeks because this action was not brought by a real party in interest. The court agrees.

Rule 25(c) "applies only when the action was commenced by the real party in interest." *In re Sandia Resorts, Inc.*, 2016 WL 3150998, at *8 (denying Rule 25(c) motion to substitute). In this case, Hunt contends that when she commenced this action on September 14, 2017, she "sued in her capacity as party in interest."[32] The court's conclusion above that Hunt is not the real party in interest in this case squarely rejects that contention. As previously indicated, when Hunt filed her bankruptcy in April 2017, "the trustee became the real party in interest, and he was the only one who could prosecute claims belonging to the bankruptcy estate." *United Parcel Serv.*, 578 F. App'x at 758. Nevertheless, after the trustee became the real party in interest, Hunt filed the instant action. Because Rule 25(c) "applies only when the action was commenced by the real party in interest," and this action was not so commenced, Hunt's motion must be denied. *In re Sandia Resorts*, 2016 WL 3150998, at *8.

### B. Rule 25(c)'s Plain Language Mandates Denial of Hunt's Motion

Academy also argues that the plain language of Rule 25(c) supports denial of Hunt's motion. Again, the court agrees. Rule 25(c) permits substitution only when "an interest is transferred" after commencement of an action. Fed. R. Civ. P. 25(c); *see also HSBC Mortg. Servs., Inc. v. Martinez*, No. 13-508 KG/KK, 2015 WL 11089505, at *2 (D.N.M. June 1, 2015) (establishing that Rule 25(c) applies only when an "interest has been transferred after the filing

---

[32] Docket no. 23 at 2.

of the lawsuit"). In this case, there was no transfer of an interest to the trustee after commencement of the action; the claim rested with the trustee all along.

Academy argues, and the court agrees, that Rule 25(c) is reserved for instances where there has been an active transfer of a claim from one party to another, usually in the context of an assignment of claim. *See, e.g.*, *Martinez*, 2015 WL 11089505, at *2 (involving assignment of a note). In the court's view, the rule should provide for orderly, continued prosecution of a claim that has been properly asserted from the beginning, and lawfully assigned or transferred to another party who has capacity to sue. It is not available where there has been no transfer of an interest after the onset of litigation. *See* Fed. R. Civ. P. 25(c); *Martinez*, 2015 WL 11089505, at *2. For this alternative reason, Hunt's motion must be denied.

### C. Substitution Is Improper

As discussed above, Hunt supports her motion by making the unsupported contention that her interest in this case was somehow transferred to the trustee and that "the [t]rustee now stands in the position of [Hunt] with respect to interest of this case."[33] In Section I.B.3. above, the court rejected Hunt's nearly identical argument that the "[t]rustee steps into [Hunt's] shoes" in this case and, consequently, inherited Hunt's interests in this action.[34] For the same reasons set forth in that section, which are incorporated here by reference, the court rejects Hunt's argument on this point.

---

[33] Docket no. 23 at 2.

[34] Docket no. 25 at 2.

**III. Academy's Motion for Summary Judgment**

Given the court's conclusion that Academy's motion to dismiss must be granted, the court need not address Academy's motion for summary judgment. Accordingly, that motion is moot.

## CONCLUSION AND ORDER

In summary, IT IS HEREBY ORDERED:

1. Academy's motion to dismiss[35] is GRANTED, and this action is DISMISSED WITH PREJUDICE.

2. Hunt's motion to substitute party[36] is DENIED.

3. Academy's motion for summary judgment[37] is MOOT.

IT IS SO ORDERED.

DATED this 27th day of September, 2018.

BY THE COURT:

PAUL M. WARNER
Chief United States Magistrate Judge

---

[35] *See* docket no. 21.

[36] *See* docket no. 23.

[37] *See* docket no. 19.